## WOODSIDE COTTON MILLS CO. v. KAUSTINE CO., Inc.

(Circuit Court of Appeals, Fourth Circuit. January 17, 1925.)

No. 2276.

1. Accord and satisfaction ⟨⟩10(1)—Compromise and settlement ⟨⟩6(2)—Adjustment of dispute between seller and buyer by abatement in price held to constitute accord and satisfaction.

Where dispute between seller of sanitary toilet systems and buyer, who refused to pay price on ground that systems had not worked as represented, was adjusted by seller making an abatement of certain amount, there was an accord and satisfaction.

2. Sales ⟨⟩53—Seller, who was required by contract to empty and recharge sanitary toilet system tanks, was not liable for cost thereof after buyer had taken over work itself under option reserved in contract.

Where contract of sale of sanitary toilet systems required seller to empty and recharge tanks, but gave buyer option of taking over such work itself, and buyer, in notice to seller of exercise of such option, did not intimate that it would look to seller for payment of any part of what the work might cost the buyer, and on exercise of option received from seller the tank wagon it had used in such work, seller was not liable to buyer for cost of emptying and recharging tanks after work was taken over by buyer.

3. Appeal and error ⟨⟩1002 — Decision of properly instructed jury on conflicting evidence is binding on the parties.

Decision of properly instructed jury on conflicting evidence is binding on the parties.

In Error to the District Court of the United States for the Western District of South Carolina, at Greenville; Ernest F. Cochran, Judge.

Action by the Kaustine Company, Inc., against the Woodside Cotton Mills Company. Judgment for plaintiff, and defendant brings error. Affirmed.

William G. Sirrine, of Greenville, S. C., for plaintiff in error.

Wilton H. Earle, of Greenville, S. C., for defendant in error.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

ROSE, Circuit Judge. It will be convenient to designate the parties by the positions they occupied below, where the plaintiff in error, the Woodside Cotton Mills Company, a South Carolina corporation was the defendant, and the defendant in error, Kaustine Company, Inc., a body corporate of the state of New York, was the plaintiff. The suit was brought to recover $3,850, alleged by the plaintiff to be the price at which it sold and delivered to the defendant certain drums of a chemical compound known as "Kaustine." There is no question that the goods were received and accepted by the defendant; that, at the time they were ordered by it, it knew that the plaintiff demanded for them the sum now claimed; and that they were of the kind and quality contemplated by the parties. The questions at issue really arise out of another and earlier contract between the same parties, for an alleged breach of which the defendant set up a counterclaim.

The relation between the parties had their origin in the desire of the defendants to supply to the residents of its mill village a system of sanitary toilets which could be maintained in effective, safe, and not disagreeable operation without facilities for discharge through sewers. The plaintiff's specialty was the supplying of such systems, and of its proprietary compound, "kaustine," upon the operation of which their usefulness depended. The parties agreed that the plaintiff should furnish and install the toilet sets and tanks and a designated initial quantity of kaustine, and that it should empty the tanks and charge them with kaustine without other charge to the defendant than 8½ cents per pound for the kaustine used; the plaintiff guaranteeing that it would never advance that price. Apparently at the time it was supposed that the tankage would have a value as a fertilizer ingredient, as it was agreed that, so long as the plaintiff emptied and discharged the tanks, the tankage was to be its property, and, if the defendant exercised the option reserved to it of itself emptying and discharging the tanks, the tankage was to belong to it.

In the contract, under the heading of "Guaranties" there were certain numbered conditions. By these the plaintiff guaranteed that the system, when maintained in

accordance with its directions, should be sanitary and free from odor, that the system was of first-class material and workmanship, and that, if any parts of it developed defects within two years from date of shipment, it would replace them at its factory free of charge, providing the damage was due to faulty construction, and that if the system during the first six months failed to give satisfaction, and plaintiff after notice was unable to make it satisfactory, it would take it back and refund the price, together with freight charges. That price was payable in two promissory notes, to become due 6 and 12 months, respectively, after the installation, and bearing interest at 5 per cent. The contract was made March 17, 1917, and the system was to be installed within 90 days thereafter, and apparently was. Defendant offers much evidence that the system worked unsatisfactorily; that, although it was maintained in accordance with plaintiff's direction, it did not remain sanitary and free from odor; and that plaintiff did not empty the tanks as often and as promptly as it should, and at times did not attempt to empty them at all. Plaintiff examined some witnesses in an effort to show that a good deal of the trouble was due to improper handling by the users, and that at least some of the lack of promptness in emptying the tanks was fairly attributed to the failure of the defendant to give reasonable notice that they were nearly full. There can, however, be no question that, if these matters at the time of the trial still remained material to the issues between the parties, the defendant was entitled to have them submitted to the jury for its determination.

[1] From defendant's standpoint, some of the troubles of which it now complains manifested themselves within 6 months after the installation of the system, but it did not exercise its option of requiring the plaintiff to remove the system. By the time the second note became due the defendant owed the plaintiff for the original cost and for kaustine since furnished, in the aggregate, $10,062. An officer of plaintiff, in an interview with the representative of the defendant, sought to collect this bill. He was met with complaints that the system had not worked as it was represented it would. After discussion, the differences were adjusted by the plaintiff making an abatement of $2,048. Plaintiff says that it is not open to the defendants now to ask for further allowance on account of the un-

satisfactory working of the system, and it assigns two reasons for its contention:

First, the defendant by the contract required plaintiff to assume an extremely onerous obligation. The latter bound itself, if the system could not be made satisfactory, to take it out and to refund all that it had received for it. It goes without saying that in that event its loss would have been great. It was willing to take the chance, provided that, with reference to the working of the system as a whole, it was the only one it did take, and provided the defendant acted within 6 months, a period of practical operation, which the parties agreed would be sufficient to test the efficiency of the system. Second, the allowance of $2,048 to the defendant, made after the system had been in use for more than a year, was an accord and satisfaction of all differences up to that time. Without pausing to consider the first of these reasons, we can see no answer to the second. Nor was there any sufficient evidence to go to the jury that plaintiff failed at any time during the 2 years to replace, on demand, any parts of the system which within that time became defective as a result of their faulty construction.

The principal objection of the defendant was, however, not to the system, nor to the quality of material or workmanship used in its construction, but to the poor care given to it; that is to say, to the failure of the plaintiff promptly to empty and recharge the tanks. There was much discussion between the parties as to this complaint, which on the 1st of October, 1919, culminated in a notice from the defendant to the plaintiff that it had arranged with a resident agent of the plaintiff to take over the work of emptying the tanks. Under the terms of the contract, this was an option which defendant had reserved to itself. There was no intimation in the letter giving the notice that the defendant purposed to look to plaintiff for payment of any part of what the work might cost the defendant. The plaintiff answered, acknowledging the receipt of the notice. It expressed its satisfaction with the defendant's determination, and concluded: "Trusting that we now start off with a clean slate, and that our future business relations may be free from any misunderstandings, we wish to remain," etc.

[2] As part of the arrangement, the plaintiff turned over to the defendant the tank wagon it had used in its work. We think that the learned judge below was right in telling the jury that under these

circumstances the defendant cannot now claim that it was entitled to charge plaintiff with the subsequent cost to it of emptying and recharging the tanks.

[3] The remaining issue was as to whether the plaintiff had billed to defendant kaustine at figures above the contract price. The evidence as to whether there had been overcharges, and, if so, what was their amount, was more or less in conflict. These differences were submitted to the jury under proper instructions, and their decision upon them is binding upon the parties.

We find no error in the rulings of the court below, and its judgment is affirmed.